UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/18/2024

BERNARD J. CONNAUGHTON,

      Plaintiff,

 -against-

MOUNT VERNON CITY SCHOOL DISTRICT, et al.,

      Defendants.

No. 21 Civ. 692 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

 Bernard J. Connaughton ("Plaintiff") commenced this action, proceeding *pro se*, against Mount Vernon City School District (the "District"), Jamal Doggett, Thrusha Henderson, and Gayle White-Wallace (collectively, "Defendants"), asserting claims for race, national origin, gender and age discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et. seq.*, the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, as well as the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq*. (Complaint ("Compl."), ECF No. 2.) Presently before the Court is Defendants' motion for summary judgment (the "Motion") on all of Plaintiff's claims. (ECF No. 45.) For the following reasons, the Court GRANTS the Motion in its entirety.

**BACKGROUND**

I. **Factual Background**

 The parties have submitted briefs, statements of material facts pursuant to Local Civil Rule 56.1, and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background. The following facts are undisputed unless otherwise noted.

Plaintiff, who is a 58-year old white man, was hired by the District as a Reading Specialist in the District's Nelson Mandela/Zollicoffer High School for the 2016-2017 School year. (Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Defs.' 56.1") ¶ 2, ECF No. 47.) Plaintiff was hired on a probationary basis, and his probationary period was to run through June 30, 2020. (ECF No. 55-9.) Plaintiff was evaluated during this period and initially received two generally positive evaluations. (Defs.' 56.1 ¶¶ 40-42.) In his third evaluation, which was conducted by a white man, Plaintiff received a 2.6 in the area of "Purposeful Instruction". (*Id.* ¶ 48.) In order to be considered for tenure, a teacher is expected to score at the level of "Effective" or higher, *i.e.* three or higher, in all areas. (*Id.* ¶ 28.)

Plaintiff was then transferred to the District's Rebecca Turner Elementary School ("RTES") for the 2017-2018 school year, where Defendant Doggett was principal. (*Id.* ¶ 4.) During his time at RTES, Plaintiff alleges that Defendant Doggett on occasion asked him if he was familiar with an older song or, conversely, assumed he would not be familiar with a newer song. (*Id.i* ¶ 167.)   Plaintiff also claims that Defendant Doggett greeted Black teachers with pleasantries on a daily basis, while he would not make eye contact with Plaintiff and rarely engage in pleasantries. (Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ("Pltf.'s 56.1") ¶ 246, ECF No. 53-1.) Plaintiff also claims that Doggett ignored him in group conversations, (*id.* ¶ 247), and asked him cover for absent or late teachers nearly thirty to forty times in the 2019-2020 school year, even though other Black teachers were also available to cover instead (*id.* ¶¶ 280, 282).

In January 2019, Plaintiff was given a letter of counsel in response to an incident in which he was accused of grabbing a student by the collar, pulling him into the classroom, and slamming the door. (Defs. 56.1 ¶ 143). The letter directed Plaintiff to leave his classroom door

open when students were present in the classroom. (*Id.* ¶ 145.) Plaintiff was later exonerated of any wrongdoing in connection with the incident.

While at RTES, Plaintiff continued to score below three in all evaluations in the area of "Purposeful Instruction," in evaluations conducted by both Black and white administrators. (*Id.* ¶ 29.) In 2019, based upon those low scores, Plaintiff was not recommended for tenure. (*Id.* ¶ 78.) Plaintiff was, however, offered the chance to extend his probationary employment by one year to provide him a chance to improve his performance. (*Id.* ¶¶ 78-79.) In exchange for this opportunity, Plaintiff provided the District with a signed and notarized release of all claims. (*Id.* ¶¶ 8, 12, 14-15.)

Plaintiff continued to score below the "effective" level in the area of "Purposeful Instruction." (*Id.* ¶¶ 86-88, 94-97.) On March 13, 2020, Plaintiff met with Defendant Doggett and was informed that he would be denied tenure. During that meeting, Defendant Doggett commented that Plaintiff was "not a good fit" at RTES. (*See* Pltf.'s 56.1 ¶ 292.) Plaintiff's probationary employment was terminated at the end of the 2019-2020 school year. (Defs.' 56.1 ¶¶ 106-110.)

## II.   **Procedural History**

Plaintiff filed this action on January 24, 2021. (Compl., ECF No. 1.) Defendants filed the instant Motion on July 14, 2023, as well as a memorandum of law (Defs.' MoL., ECF No. 46) and a reply (Defs.' Reply, ECF No. 52) in support thereof. Plaintiff filed a memorandum of law in opposition to the Motion. (the "Opposition" or "Pltf.'s Opp.", ECF No. 49.)

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a

matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986).  "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted).  In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party.  *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact.  *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists.  If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted."  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

## DISCUSSION

### I. <u>Released Claims</u>

Defendants submit that the majority of the allegations in Plaintiff's Complaint should not be considered because they are based upon events that took place prior to March 18, 2019, and

Plaintiff previously waived his right to assert any causes of action against Defendants based upon events prior to and including that date. In particular, Plaintiff signed a waiver (the "Release") which released the District as well as their "officers, employees, agents or independent contractors" from "all actions, causes of action, suits" Plaintiff "ever had, now have or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of execution of this RELEASE, in connection with his employment with the MOUNT VERNON CITY SCHOOL DISTRICT." (Defs.' 56.1 ¶14.) Plaintiff signed the release after consulting with "counsel," including his union representative, being "fully informed of all [his] rights at law, at contract or under Board policy" and "without duress and in full knowledge of its consequences and to the waiver of [his] rights under law or under contract that [he] may have previously asserted against the Mount Vernon City School District, Superintendent of Schools and/or Board of Education." (*Id.* ¶ 10.)

The enforceability of the Release as to Plaintiff's Title VII and ADEA claims is governed by federal law. *See Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10, 15 (2d Cir. 1993) (holding that federal law determines the validity of a release of a federal statutory claim). Under Title VII and the ADEA, an employee may validly waive a discrimination claim so long as the waiver is made knowingly and voluntarily. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The Second Circuit has adopted the "totality of the circumstances" inquiry to determine whether a release of Title VII claims is knowing and voluntary. *See Bormann v. AT & T Communications, Inc.,* 875 F.2d 399, 403 (2d Cir. 1989). In *Bormann,* the court identified several factors relevant to this inquiry (the "*Bormann* factors"): (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the release before signing it; (3) the plaintiff's role in deciding the

terms of the release; (4) the clarity of the release; (5) whether the plaintiff was represented by or consulted an attorney; (6) whether the consideration given in exchange for the employee's waiver exceeds benefits to which the employee was already entitled by contract or law; (7) whether the employer encouraged the employee to consult an attorney; and (8) whether the employee had a fair opportunity to do so. *Id.* These factors are not exhaustive, and all need not be satisfied before a release is deemed enforceable. *Id.* at 403 & n. 1; *see also Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 129 (S.D.N.Y. 2012), *aff'd*, 556 F. App'x 56 (2d Cir. 2014). "The essential question is whether, in the totality of the circumstances, the individual's waiver of his right can be characterized as knowing and voluntary." *Cordoba v. Beau Dietl & Assocs.*, No. 02 CIV.4951 MBM, 2003 WL 22902266, at *5 (S.D.N.Y. Dec. 8, 2003) (quoting *Baba v. Warren Mgmt. Consultants, Inc.,* 882 F.Supp. 339, 344 (S.D.N.Y. 1995)) (quotation marks omitted).

Here, the balance of *Bormann* factors supports a finding that Plaintiff's waiver of Title VII and ADEA claims was knowing and voluntary. *First*, Plaintiff's education experience—advanced degrees giving him the ability to teach graduate level courses (*see* Pltf.'s 56.1 ¶ 278)—warrants the inference that he was capable of understanding the terms of the Release. *See Prunella v. Carlshire Tenants, Inc.,* 94 F.Supp.2d 512, 516 (S.D.N.Y. 2000) (release valid where employee had a high school diploma and was a certified plumber); *Bachiller v. Turn On Prod., Inc.,* No. 00 CIV. 8701 (JSM), 2003 WL 1878416, at *4 (S.D.N.Y. Apr. 14, 2003), *aff'd*, 86 F. App'x 465 (2d Cir. 2004) (release valid where employee had a high school equivalency diploma and was an accounts payable clerk).

*Second*, it is unclear how long Defendants gave Plaintiff to sign and return the Release, but the length of time was apparently sufficient for Plaintiff to consult both counsel and his union representative before signing. (*See* Defs.' 56.1 ¶ 10.) The Court finds this to be a period

6

sufficient for Plaintiff to acquaint himself with the Release's terms and make a considered decision. *See Evans v. Waldorf–Astoria Corp.,* 827 F.Supp. 911, 913 (E.D.N.Y. 1993) (holding that a period of hours was sufficient to review and sign off on release), *aff'd* 33 F.3d 49 (2d Cir. 1994).

*Third*, Plaintiff argues that he had no role in deciding the terms of the Release, and that instead it was a standard form given to him by Defendants. (Pltf.'s Opp. at 5.) This may be so, but the fact that Plaintiff did not have an opportunity to negotiate the terms of the Release alone does not warrant a trial on "voluntariness." *See Bormann,* 875 F.2d at 403 n. 1; *Branker v. Pfizer, Inc.,* 981 F.Supp. 862, 867 (S.D.N.Y. 1997) ("[I]n light of the balance of the other [*Bormann*] factors to be considered, lack of input [in determining release's terms] alone cannot support invalidating the release.").

*Fourth*, the Release is unambiguous, comprehensible and written in plain English. It refers to "*all* actions, causes of action, suits" Plaintiff "ever had, now have or hereafter can, shall or may have for, upon, or by reason of any matter." (Defs.' 56.1 ¶ 14) (emphasis added). Plaintiff signed the Release with, in his words, "full knowledge of its consequences and to the waiver of [his] rights under law or under contract that [he] may have previously asserted against the Mount Vernon City School District, Superintendent of Schools and/or Board of Education." (*Id.* ¶ 10.) The Court has previously upheld such a clear release written in plain English. *See Laramee v. Jewish Guild for the Blind,* 72 F.Supp.2d 357, 360 (S.D.N.Y. 1999) (upholding validity of release that was three pages and written in plain English). Plaintiff later testified that he was not familiar with the Release, but his statements to the Board of Education of the Mount Vernon City School District contradict this. (*Compare* Pltf.'s 56.1 ¶¶ 296-270 *with* Defs.' 56.1 ¶ 8-12.) Accordingly, the record is clear that, at the time of the signing, Plaintiff read and understood the

terms of the Release, even if there is a dispute with regard to his understanding of the Release later on.

*Fifth*, Plaintiff acknowledges that he discussed the terms of the Release with both counsel and his union representative before signing it. (*See* Defs.' 56.1 ¶¶ 10-11.) Plaintiff protests that the language of the Release was drafted by the District (Pltf.'s Opp. at 5), but this fact alone does not preclude a finding that the Release was knowing and voluntary. *See Baba,* 882 F.Supp. at 344 (upholding validity of release where employee was represented by an attorney, even though the release contained standardized language). Plaintiff has not also pled any facts to suggest that counsel and/or his union representative misled Plaintiff on the effect of the Release. *Cf. George v. Mobil Oil Corp.,* 739 F.Supp. 1577, 1581 (S.D.N.Y.1990) (invalidating release where attorney did not participate in negotiating the agreement, but advised employee that release was not binding).

Accordingly, the totality of the circumstances weighs in favor of finding Plaintiff's waiver under the Release knowing and voluntary. The Court will enforce the Release. As a result, Defendants are entitled to summary judgment on any and all of Plaintiff's claims, suits, and actions based on events occurring prior to March 18, 2019, because they are barred by the clear terms of the Release. *See Leftridge v. New York City Department of Education*, 2020 WL 1503665, *5 (S.D.N.Y. March 30, 2020) (dismissing claims against individual defendants even though they were not named in the general release because the general release included language waiving any and all claims against the defendant City and employees of the City.) The Court will therefore limit the scope of its inquiry to only Plaintiff's potential claims that arose subsequent to March 18, 2019, which is the date of the Release.

## II.   Title VII/ADEA Claims

In his Complaint, Plaintiff alleges discrimination based upon his race, gender, and national origin in violation of Title VII and his age in violation of the ADEA. Defendants contend that Plaintiff has failed to produce evidence sufficient to support any of these claims and therefore summary judgment is warranted on each claim. (*See* Defs.' MoL at 6-17.)

Title VII prohibits employment discrimination based on race, color, sex and national origin. 42 U.S.C. § 2000e–2(a)(1). Title VII covers various forms of discrimination, including intentional discrimination (disparate treatment), "facially neutral practices that have a disparate impact on protected groups" (disparate impact), *Hagan v. City of New York*, 39 F. Supp. 3d 481, 494–95 (S.D.N.Y. 2014) (quoting *Wright v. Stern*, 450 F.Supp.2d 335, 367 (S.D.N.Y. 2006)), and a "workplace [that] is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" (hostile work environment), *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations and quotations omitted).

Here, the Plaintiff asserts both disparate treatment and hostile work environment claims. The Court will consider each type of claim in turn.

### a.   Disparate Treatment

To establish a prima facie case of disparate treatment, a plaintiff must show: "(i) membership within a protected group; (ii) satisfactory performance; (iii) an adverse employment action; and (iv) circumstances surrounding the action that give rise to an inference of unlawful discrimination." *Collins v. N.Y.C. Transit Auth.,* 305 F.3d 113, 118 (2d Cir. 2002) (citations omitted). For the fourth factor,

> an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: …'the employer's criticism of the plaintiff's performance in

ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'

*Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)). In this case, the parties agree that Plaintiff can establish the first three elements of his *prima facie* case (*see* Defs'. MoL at 8-13; Pltf.'s Opp. at 9), and dispute only whether the decision to not recommend Plaintiff for tenure and to terminate his probationary employment took place under circumstances giving rise to an inference of discrimination, *see Graham v. Long Island R.R.,* 230 F.3d 34, 38–39 (2d Cir. 2000).

Plaintiff cites several comments by Defendant Doggett to establish the inference of discrimination necessary for his *prima facie* disparate treatment claims. In support of his Title VII claim for race discrimination, Plaintiff's only non-Release barred piece of evidence is Defendant Doggett's comment that Plaintiff was "not a good fit" at the time that he was denied tenure, a comment which Plaintiff argues was racially charged. (*See* Pltf.'s 56.1 ¶ 292.) In support of his ADEA claim for age discrimination, Plaintiff alleges that Defendant Doggett on occasion asked Plaintiff if he was familiar with an older song or, conversely, assumed he would not be familiar with a newer song. (Defs. 56.1 ¶ 167.)

"Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." *Silver v. N. Shore Univ. Hops.,* 490 F.Supp.2d 354, 362 (S.D.N.Y. 2007). In other words, a comment or a remark can be proof of discrimination where it has a "tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." *Galimore v. City University of New York Bronx*

*Community College,* 641 F.Supp.2d 269, 284 (S.D.N.Y. 2009) (citation omitted). Courts have found the following factors relevant to such a determination:

> (1) who made the remark, *i.e.,* a decisionmaker, a supervisor, or a low-level coworker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.,* whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.,* whether it was related to the decision making process.

*Silver,* 490 F.Supp.2d at 363 (citations omitted). "Only where decision-makers repeatedly make comments that draw a direct link between a plaintiff['s] membership in a protected class and adverse employment action can an inference of discriminatory animus be drawn." *Jowers v. Family Dollar Stores, Inc.,* 2010 WL 3528978, at *3 (S.D.N.Y. Aug. 16, 2010); *Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 56 (2d Cir. 1998) (holding that in order for stray remarks to be deemed significant, the plaintiff must show their nexus to the adverse employment decision). "In the absence of a clearly demonstrated nexus to an adverse employment action, stray workplace remarks are insufficient to defeat a summary judgment motion." *Almonord v. Kingsbrook Jewish Medical Center,* No.04–CV–4071(NGG), 2007 WL 2324961, at *9 (E.D.N.Y. Aug. 10, 2007) (citing *Danzer,* 151 F.3d at 56).

The Court finds that Defendant Doggett's alleged comments, even if all accepted as true, are non-actionable stray remarks because they do not have a "tendency to show that the decision-maker [Doggett] was motivated by assumptions or attitudes relating to the protected class." *Galimore,* 641 F.Supp.2d at 284. A reasonable juror would not view these remarks as discriminatory as they were not made in context relevant to the decision-making process. *Silver,* 490 F.Supp.2d at 363. Doggett's alleged remarks have no relation to the question of Plaintiff's eligibility for tenure or his employment generally. Even Defendant Doggett's comment that Plaintiff was "not a good fit" does not, when taken together with other undisputed record

evidence, appear to be about race. Plaintiff cites to *Mauro v. New York City Dep't of Educ.,* No. 21-2671, 2022 WL 17844438, at *2 (2d Cir. Dec. 22, 2022) for the claim that such a comment can be about race, but the plaintiff in *Mauro* had, in addition to the "not a good fit" comment, put forth evidence that other similarly situated teachers not in his protected class received differential treatment from him. The *Mauro* decision was also at the motion to dismiss stage. Here, as discussed *infra*, Plaintiff has not provided any evidence of disparate treatment of similarly situated individuals not in his protected class, and the Court is currently evaluating his Title VII claims for summary judgment purposes. In sum, Plaintiff is unable to clearly demonstrate a nexus between Doggett's alleged comments and the adverse employment action of his termination, and therefore the remarks do not support the inference of discrimination necessary for a *prima facie* disparate treatment claim.

Plaintiff additionally cites instances in which Defendant Doggett allegedly treatment Plaintiff differently than similarly situated teachers not in his protected class, namely Black teachers. In particular, Plaintiff contends that Defendant Doggett greeted Black teachers with pleasantries on a daily basis, while he would not make eye contact with Plaintiff and rarely engage in pleasantries.[1] (Pltf.'s 56.1 ¶ 246.) Plaintiff also claims that Doggett ignored him in group conversations, (*id.* ¶ 247), and asked him cover for absent or late teachers nearly thirty to forty times in the 2019-2020 school year, even though other Black teachers were also available to cover instead (*id.* ¶¶ 280, 282). Finally, Plaintiff asserts that observations were waived for other teachers because of COVID, but not for Plaintiff. (Pltf.'s 56.1 ¶¶ 296-97.) Defendants dispute this fact and claim that the only observations which were waived were those that would have been conducted after the District began remote operations due to COVID, which, in any

---

[1] Plaintiff also notes that Doggett admitted in his deposition that he has never tenured any white male teachers, though, as Defendants add, the only other white male teacher who was scheduled for tenure before Doggett moved away before he could be considered. (Defs.' Reply at 4.)

event, was after the decision to terminate Plaintiff's probationary period had already been made. (Defs.' 56.1 ¶¶ 117-19.)

Under Second Circuit law, where a plaintiff seeks to make out a case of discrimination "by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that [ ]he shared sufficient employment characteristics with that comparator so that they could be considered similarly situated." *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir. 1997). To be similarly situated, "a plaintiff must show that h[is] co-employees were subject to the same performance evaluation and discipline standards." *Graham v. Long Island R.R.,* 230 F.3d 34, 40 (2d Cir. 2000) (citing *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 96 (2d Cir. 1999)).; *see also Hill v. Rayboy-Brauestein,* 467 F. Supp. 2d 336, 356–57 (S.D.N.Y. 2006) (to be similarly situated, a person "must have been subject to the same standards governing performance evaluation and discipline and must have engaged in conduct similar to Plaintiff's"). In addition, Plaintiff must demonstrate that the similarly situated employees engaged in comparable conduct. *Graham,* 230 F.3d at 40.

Here, Plaintiff has failed to identify any Black employees who were similarly situated to him, let alone demonstrate how they were similarly situated. Instead, Plaintiff generally contends that "Black teachers" were not subject to scrutiny and treated in a more friendly manner by Defendant Doggett. (Pltf.'s Opp. at 13.) As this Court has previously found, "[s]tatements that are devoid of any specifics, but replete with conclusions," such as these, "are insufficient to defeat a properly supported motion for summary judgment." *Griffin v. Ambika Corp.,* 103 F. Supp. 2d 297, 308 (S.D.N.Y. 2000) (internal quotations and citations omitted). *See also Finney v. Planned Parenthood of N.Y. City, Inc.,* No. 02 Civ. 7942, 2003 WL 22928730, at * 4 (S.D.N.Y. Dec. 10, 2003) (granting summary judgment where only evidence of disparate treatment was

Plaintiff's own conclusory allegations). Although the burden of meeting the prima facie case is "de minimis," Plaintiff must adduce some admissible evidence that would support his claims. *See Douglas v. Dist. Council 37 Mun. Employees' Educ. Fund Tr.*, 207 F. Supp. 2d 282, 289 (S.D.N.Y. 2002). Here, Plaintiff has produced no concrete evidence of similarly situated non-white teachers, nor of non-male teachers and/or younger teachers.

Instead, the undisputed facts on the record suggest that the reason for Plaintiff's termination was much simpler: Plaintiff consistently scored low on his performance evaluations, particularly in the area of "Purposeful Instruction." (Defs.' 56.1 ¶¶ 106-107, 111.) Plaintiff does not dispute that his evaluation scores in the area of Purposeful Instruction were low, but rather claims that after he was investigated regarding an incident in which he was accused of grabbing a Black student by the collar, pulling him into the classroom, and slamming the door, Black administrators began to give him artificially lower scores. (Pltf.'s Opp. at 14.) The undisputed record evidence directly contradicts this. In reality, the scores given to Plaintiff by Black administrators were no different and, in some cases, higher, than those given to him by purportedly fair and impartial white administrators. (Defs.' 56.1 ¶¶ 34, 36-37.) Plaintiff claims that the race of the student he was accused (and later exonerated of) getting into an altercation was a factor in his scores, but not only are his scores from Black administrators not consistently lower, Plaintiff has yet to produce any evidence that the race of the student was ever raised by anyone in connection the investigation. Instead, Plaintiff assumes that because the student was Black and he is white, Defendant Doggett must have been determined to punish him for the accusation, even though, once Plaintiff was exonerated, Doggett took no such action. Plaintiff's speculation does not suffice to support a disparate treatment claim here.

In sum, Plaintiff has done little more than cite to his perceived mistreatment "and ask the [C]ourt to conclude that 'it must have been related to his race. This is not sufficient.'" *Howard v. City of New York*, 602 F. App'x 545, 548  (2d Cir. 2015) (summary order) (quoting *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 104 (2d Cir. 2001)). Plaintiff has failed to create a "mosaic" of intentional discrimination by identifying "bits and pieces of evidence" that together give rise to an inference of discrimination. *Cf. Gallagher v. Delaney,* 139 F.3d 338, 342 (2d Cir. 1998). Instead, Plaintiff's proffered evidence fails to establish an inference of discrimination and, as a result, his Title VII and ADEA disparate treatment claims fail as a matter of law.

   b.   <u>Hostile Work Environment</u>

In order to prevail on a hostile work environment claim under Title VII and the ADEA, a plaintiff must show that his or her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Redd v. N.Y. Div. of Parole,* 678 F.3d 166, 175 (2d Cir. 2012) (internal quotation marks and alteration omitted). The misconduct must be "so objectively offensive as to alter the 'conditions' of the victim's employment." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Courts "distinguish between merely offensive or boorish conduct and conduct that is sufficiently severe or pervasive as to alter the conditions of employment," *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 66–67 (S.D.N.Y. 2015) (internal quotation marks omitted), based on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Finally, personal animus without evidence of discriminatory bias on the basis of a

protected characteristic is insufficient to establish a hostile work environment claim. See *Lennert- Gonzalez v. Delta Airlines, Inc.,* 2013 WL 754710, at *8 (S.D.N.Y. Feb. 28, 2013).

Here, Plaintiff is unable to show misconduct on the part of any of the Defendants that is sufficiently severe or pervasive as to have altered the conditions of Plaintiff's employment. Plaintiff contends that Defendants engaged in a "pattern of severe and pervasive abuse" that created a hostile work environment for him. (Pltf. Opp. at 22.) But Plaintiff's evidence is the same collection of stray remarks and perceived slights that were unactionable for purposes of his disparate treatment claims. For example, Plaintiff complains that Doggett created a hostile work environment by "refusing to support Plaintiff with regards to elaboration of his observations;…being harassed with the false accusations even when the allegations against him were unfounded;…extending his probationary period; …issuing him unwarranted poor observation reports;…treating him poorly on a daily basis by ignoring him;…[and] categorizing his classroom as not an effective room." (*Id.*). Even assuming that all of the allegations against Plaintiff actually occurred, these claims amount to a few incidents that (1) have no demonstrated connection to Plaintiff's membership in a protected class and/or (2) directly bear on his performance as an employee. Moreover, the incidents are minor, while this Court has found far more severe treatment insufficient to establish hostile work environment. *See, e.g., Marquez v. City of N.Y.*, No. 14-CV-8185, 2016 WL 4767577, at *8 (S.D.N.Y. Sept. 12, 2016) (comment that plaintiff was "nice and tight," massaging plaintiff's back, and putting fingers past belt area down plaintiff's pants not objectively severe)*; Liburd v. Bronx Lebanon Hosp. Ctr.,* 2009 WL 900739, at *1, *8- 9 (S.D.N.Y. Apr. 3, 2009) (no hostile work environment where supervisor ignored and spoke to plaintiff harshly at meetings and referred to her as "black ass" on three occasions), *affd,* 372 F. App'x 137, 139-40 (2nd. Cir. 2010); *Jackson v. Citiwide Corp. Transp.,*

*Inc.*, No. 2-CV-1323, 2004 WL 307243, at *2–3 (S.D.N.Y. Feb. 17, 2004) (repeated sexual jokes and comments, staring at plaintiff's breasts on repeated occasions, and pinching her on side and rear end insufficiently severe and pervasive). No reasonable juror could conclude that Defendant Doggett's conduct created a workplace so "permeated with discriminatory intimidation, ridicule, and insult that [it] [was] sufficiently severe or pervasive to alter the conditions of the [Plaintiff's employment and create an abusive working environment." *Redd,* 678 F.3d at 175. At most, Defendant Doggett ignoring Plaintiff can be seen as an example of personal animus without evidence of discriminatory bias on the basis of a protected characteristic, which is insufficient to establish a hostile work environment claim. See *Lennert- Gonzalez,* 2013 WL 754710, at *8. Likewise for Plaintiff's "mere subjective belief that he was discriminated against" in connection with the cited incidents. *See Almodovar v. Cross Fin. Corp.,* 2022 WL 1810132, *8 (S.D.N.Y. June 2, 2022).

The remaining incidents Plaintiff cites in support of his hostile work environment claim are no more helpful to his arguments. Plaintiff points to his "being humiliated during end of year reading department Comedy club gathering," and being directed by Defendant Doggett to "keep his [classroom] door open," but both incidents occurred prior to the March 2019 Release, and are therefore barred by the terms of said Release. The same applies to any incidents involving Defendant White-Wallace, including her referring to Plaintiff by the nickname "Prince Charming", because White-Wallace ceased overseeing meetings involving Plaintiff in August 2018. (Defs.' 56.1 ¶¶ 207-208.) Any allegations against her for that reason are also barred by the March 2019 Release.

In sum, despite Plaintiff's "litany of facts regarding his mistreatment by coworkers and supervisors," the few facts alleged by Plaintiff even vaguely "relating to his race or [age or

gender] do not amount to more than stray remarks made by co-workers and cannot support a plausible claim of hostile work environment." *See Rissman v. Chertoff,* No. 08 Civ. 7352(DC), 2008 WL 5191394, at *2 (S.D.N.Y. Dec. 12, 2008). For this reason, his hostile work environment claim fails as a matter of law.

     c.   <u>Retaliation</u>

Plaintiff additionally asserts retaliation as part of his federal claims. Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice…or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The Defendants argue that summary judgment should be granted on this claim because Plaintiff did not defend it in his Opposition. (Defs.' Reply at 1 n.3.) "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Capak v. Epps*, No. 18-CV-4325 (KHP), 2023 WL 2574879, at *2 (S.D.N.Y. Mar. 20, 2023) (quoting *Xu v. City of New York*, 2020 WL 2088301, at *4 (S.D.N.Y. Apr. 30, 2020)). The Court finds that Plaintiff has abandoned his retaliation claim and Defendants are therefore entitled to summary judgment on this issue.

## III.   <u>Section 1981</u>

Plaintiff brings a claim for discrimination pursuant to 42 U.S.C. § 1981 ("Section 1981"). Defendants argue that summary judgment should be granted on this claim because Plaintiff did not engage in any substantive way with Defendants' arguments against it in his Opposition. (Defs.' Reply at 8). In his Opposition, Plaintiff merely notes that "Section 1981 bars certain racially motivated and purposefully discriminatory acts" and states the standard for such a claim,

without any further discussion. (Pltf.'s Opp. at 6.) This is plainly deficient as Plaintiff, the party

opposing summary judgment, must address Defendants' arguments to avoid summary judgment.

Accordingly, the Court finds that Plaintiff has abandoned his Section 1981 claim and Defendants

are therefore entitled to summary judgment on this issue. *See Capak*, 2023 WL 2574879, at *2.

## IV.  <u>Section 1983</u>

Plaintiff argues that, in the alternative, his Section 1981 claim can be construed as a claim

pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Pltf.'s Opp. at 6.) To state a claim under Section

1983 against a local government, the plaintiff must satisfy the requirements of *Monell v.*

*Department of Social Services of New York City*, 436 U.S. 658 (1978). That is, the plaintiff must

"plead the existence of a municipal custom, policy, or practice which caused the deprivation of

her constitutional rights." *Martinetti v. Mangan*, No. 17-CV-5484 (KMK), 2019 WL 1255955, at

*8 (S.D.N.Y. Mar. 19, 2019) (citation omitted). A plaintiff may satisfy the "policy or custom"

requirement by alleging one of the following: (1) a formal policy officially endorsed by the

municipality; (2) actions taken by government officials responsible for establishing the

municipal policies that caused the particular deprivation in question; (3) a practice so consistent

and widespread that, although not expressly authorized, constitutes a custom or usage of which a

supervising policy-maker must have been aware; or (4) a failure by policymakers to provide

adequate training or supervision to subordinates to such an extent that it amounts to deliberate

indifference to the rights of those who come into contact with the municipal employees. *Brandon*

*v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). For prior

acts to constitute a de facto policy of a municipality, those acts must have been "so widespread

and so persistent…[to] ha[ve] the force of law." *Hawthorne by Hawthorne v. Cnty. of Putnam*,

492 F. Supp. 3d 281, 292 (S.D.N.Y. 2020).

Here, Plaintiff fails to allege an official policy or custom that caused his alleged constitutional injuries. In fact, Plaintiff does not even address the policy or custom requirement of *Monell* in his Opposition, and even admitted at his deposition that he was unsure if the discrimination he alleges to have encountered was "District-wide." (Defs.' 56.1 ¶ 224.) Accordingly, Plaintiff's Section 1983 claim fails as a matter of law and summary judgment is granted to Defendants.

## V.   <u>State Law Claims</u>

Plaintiff additionally alleges discrimination based upon his race, gender, and age and retaliation in violation of the NYSHRL. Federal courts have supplemental jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may, at its discretion "decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has instructed that, in deciding whether to exercise supplemental jurisdiction, a district court should balance the traditional "values of judicial economy, convenience, fairness, and comity," *Carnegie Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), and that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well,'" *In re Merrill Lynch Ltd. P'ships Litig.,* 154 F.3d 56, 61 (2d Cir.1998) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Although the exercise of supplemental jurisdiction is discretionary, the ordinary case "will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch,* 154 F.3d at 61 (quoting *Cohill,* 484 U.S. at 350 n. 7, 108 S.Ct. 614).

Here, though the Court has dismissed all of Plaintiff's federal claims, it finds that the "values of judicial economy, convenience, fairness, and comity," *Cohill,* 484 U.S. at 350, 108 S.Ct. 614, support the exercise of supplemental jurisdiction over Plaintiff's NYSHRL claims. Standards for liability under Title VII, the ADEA and the NYSHRL are coextensive, and analytically identical to each other.[2] *See Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98, 107 n.10 (2d Cir. 2011); *Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 184 n.14 (S.D.N.Y. 2013). Deciding Plaintiff's state-law claims therefore does not require the investment of additional judicial resources. "Nor is there a substantial comity concern raised by this Court's application of state law with which courts in this District are eminently familiar, and which is applied by those courts every day." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 413 (S.D.N.Y. 2014). The Court therefore finds that the *Cohill* factors weigh in favor of supplemental jurisdiction over Plaintiff's NYSHRL claims.

Turning now to the merits of Plaintiff's NYSHRL claims, the Court finds that Plaintiff's state law discrimination and retaliation claims also fail as a matter of law. As stated above, the standard of liability under the NYSHRL is coterminous with those under Title VII and the ADEA. "As a result, the Court's analysis regarding Plaintiff's federal claims applies with equal force to his NYSHRL claims. And for the same reasons Plaintiff's federal claims were deficient, dismissal of Plaintiff's NYSHRL claims against the [Defendants] is plainly warranted." *Iazzetti,*

---

[2] The NYSHRL differs from Title VII and the ADEA in the respect that an individual defendant with supervisory control may be held personally liable under the aiding and abetting provision of the NYSHRL if he "actually participates in the conduct giving rise to a discrimination claim." *Rojas*, 660 F.3d at 107 (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)); *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 451 (S.D.N.Y. 2018). Here, "because Plaintiff has failed to establish violations of Title VII or the ADEA—and, therefore, the NYSHRL—against the [Defendants], there is no basis on the face of the Complaint to impute aider and abettor liability." *Iazzetti v. Town of Tuxedo*, No. 18-CV-6200 (NSR), 2020 WL 4340872, at *12 (S.D.N.Y. July 27, 2020); *see also Johnson v. City of New York*, 18-CV-9600 (AJN), 2020 WL 2036708, at *5 (S.D.N.Y. Apr. 28, 2020) (dismissing NYSHRL aiding and abetting claim because plaintiff failed to plead an underlying violation of the statutes).

2020 WL 4340872, at *12. The Court therefore grants Defendants summary judgment on Plaintiff's NYSHRL claims.

## CONCLUSION

Defendants' Motion for summary judgment is GRANTED and all of Plaintiff's claims are dismissed with prejudice. The Clerk of Court is kindly directed to terminate the motion at ECF No. 45, issue judgment in favor of Defendants, and close the case. The Clerk of Court is further directed to mail a copy of this Order to *pro se* Plaintiff at Plaintiff's address listed on ECF and to show service on the docket.

Dated: April 18, 2024                                         SO ORDERED:
White Plains, New York

                                                   _____
                                                       NELSON S. ROMÁN
                                                   United States District Judge

22